## OLSEN v. TEXAS CO. et al.

No. 1471.

Court of Appeal of Louisiana.
First Circuit.

May 14, 1935.

Robert R. Stone, of Lake Charles, for appellant.

McCoy, King & Jones, of Lake Charles, for appellees.

DORE, Judge.

This suit is brought by the tutor of his minor for compensation for the death of the minor's father under the Employers' Liability Act (Act No. 20 of 1914, as amended).

The employee sustained a hernia on May 6, 1933, during the course of his employment, and was operated on for correction of the

hernia on August 28, 1933, and died on September 11, 1933.

The only question presented by the pleadings, admissions, and evidence in this cause before us is whether the employee's death was in any way the result of the operation for reduction of the hernia, or did he die as the result of disease.

The deceased was a young man twenty-eight years of age who had always been engaged in hard labor, and, for several years prior to his death, had been working in the open on derricks or derrick floors in the drilling of oil wells in various parts of Louisiana. While in this work, he sustained a hernia on his left side. Regardless of this hernia, deceased continued to work in the same position and followed the same laborious work until August 14, 1933, at which time he decided upon being operated in order to correct the hernia.

Prior to the operation, the surgeon, whom he consulted, informed the decedent that he was suffering with a heart disease, and recommended to the decedent that a rest should be taken before the operation. Upon this surgeon's advice, the decedent undertook a ten days' rest; and, after this rest, the decedent again visited his surgeon for the operation. The surgeon in charge decided that it was best not to administer ether or chloroform but did administer a spinal anaesthesia; the surgeon then performed the operation necessary. The evidence, expert in character and medical at that, is abundant to the fact that in such cases the general danger of such an operation is considered over after seventy-two hours. The operation proved to be a complete success—twelve days thereafter the deceased was about to be discharged when he suddenly sank into a coma and died a few hours afterwards.

An autopsy of the deceased showed him to have been a bad operative risk, and we are convinced by the evidence that he was suffering from an enlarged heart, chronic endocarditis, which is an inflammation of the endocardum, a membrane lining the cavities of the heart; chronic myocarditis, an inflammation of the muscular walls of the heart; chronic splenitis, an inflammation of the spleen; chronic nephritis, an inflammation of the kidneys; and toxic hepatitis, an inflammation of the liver. And, according to the evidence of all the physicians testifying in this case, the decedent was a fit subject for the cemetery.

On the mitral valve of the deceased's heart was a "vegetable growth, cauliflower in appearance," .50 cm. in diameter. We are further convinced that said cauliflower growth was either chronic or subacute. But, be that as it may, the evidence is all to the effect that the said cauliflower growth was very hard and did not strip easily.

It is also evident that the decedent was suffering from diseased blood vessels in the brain.

It is not disputed that the cause of deceased's death was a hemorrhage of the brain.

The plaintiff bases his contention that decedent's death was caused or hastened by the operation on the theory that weakened resistance, caused by the operation, caused an embolus to lodge in a blood vessel in the brain, this, in turn, causing a hemorrhage resulting in the death.

The evidence in this case is abundant to the fact that the cause of death was not caused by a clot of blood, in medical term an embolus, being carried by the blood vessels from the incision or wound to the brain; the evidence is to the effect that such a clot of blood would be sifted by the lungs and could not reach the brains, except one that is so small as to necessitate the use of the microscope to see it. The plaintiff, from our understanding, has abandoned this theory.

The only theory remaining, after we have carefully considered his argument, both orally and in brief, is that the embolus causing death came from this cauliflower growth, and which we now propose to discuss.

On that score, all the physicians testifying in this case agree that no embolus was discovered. All the physicians agree that any embolus originating in the heart would have been discovered in the brain at the autopsy, and none was discovered.

None of the plaintiff's witnesses definitely testified that the operation in any way hastened the deceased's death. But the weight of the evidence is to the effect that this man died from cerebral hemorrhage, and that the operation did not contribute in any way to his demise.

The only evidence we can find is to the effect that there is a probability that the man's demise was caused or accelerated by his operation. It was incumbent upon the plaintiff to show more. The plaintiff must make his case certain—to make it probable is not enough.

From careful consideration of the testimony in this case and the judgment of the lower court, we are of the opinion that the judgment should be affirmed.

Affirmed.